**Appeal No. 23-1879**

———————————

IN THE
United States Court of Appeals for the Eighth Circuit

———————————

STECKLEIN & RAPP CHARTERED,
*Plaintiff–Appellee,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
*Defendant–Appellant.*

On Appeal from the United States District Court
for the Western District of Missouri, Hon. Roseann Ketchmark
Case No. 4:23-mc-09003

**BRIEF FOR APPELLANT
EXPERIAN INFORMATION SOLUTIONS, INC.**

Adam Wiers
Chris Hall
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: awwiers@jonesday.com

G. Edgar James
JAMES SOBBA, LLC
4435 Main Street, Suite 910
Kansas City, Missouri 64111
Telephone: (816) 623-0544
Facsimile: (816) 623-0568
Email: ejames@jamessobba.com

*Counsel for Defendant–Appellant Experian Information Solutions, Inc.*

Appellate Case: 23-1879    Page: 1    Date Filed: 06/23/2023 Entry ID: 5289424

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Craig and Brianna Dulworth ("the Dulworths") filed suit against Experian Information Solutions, Inc. ("Experian") alleging that Experian violated a provision of the Fair Credit Reporting Act ("FCRA") that permits consumers to file a cause of action only upon "directly" sending a dispute to a consumer reporting agency like Experian. *See Dulworth v. Experian Information Solutions, Inc.*, No. 1:22-cv-00469 (S.D. Ind.); 15 U.S.C. § 1681i. Discovery showed that the Dulworths did not directly send in a dispute, but rather engaged the services of a likely credit repair organization operation, Stecklein & Rapp Chartered ("Stecklein & Rapp"), who also operates a law firm. The law is clear that Experian is not obligated to respond to disputes sent by credit repair organizations like Stecklein & Rapp. Experian thus served Stecklein & Rapp with subpoenas, aimed at obtaining discovery into Stecklein & Rapp's credit repair operations. After Stecklein and Rapp moved to quash the subpoenas, the District Court had only two questions to consider: whether the subpoenas sought relevant information and, if so, whether Experian took reasonable steps to avoid undue burden. Although the answer to the first question was plainly yes, and the District Court ignored the second question altogether, the District Court quashed the subpoenas and awarded Stecklein & Rapp attorneys' fees and costs.

Experian requests fifteen minutes of oral argument and believes it would assist the Court.

i

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Experian makes the following required disclosures:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?

Yes. Experian plc owns 100% of Experian Information Solutions, Inc. Experian plc is registered as a public company in Jersey, Channel Islands, and is publicly traded on the London Stock Exchange.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

Yes. Experian plc has such an interest due to its ownership of Experian Information Solutions, Inc.

/s/ Adam W. Wiers
*Counsel for Defendant–Appellant*
*Experian Information Solutions, Inc.*

ii

# TABLE OF CONTENTS

SUMMARY OF THE CASE................................................................i

CORPORATE DISCLOSURE STATEMENT ....................................ii

JURISDICTIONAL STATEMENT ..................................................1

STATEMENT OF THE ISSUES.......................................................2

STATEMENT OF THE CASE...........................................................3

     A.     THE FAIR CREDIT REPORTING ACT ............................3

     B.     CREDIT REPAIR ORGANIZATIONS ..............................3

     C.     EXPERIAN INFORMATION SOLUTIONS, INC...........................4

     D.     STECKLEIN & RAPP ....................................................5

     E.     THE DULWORTHS' LAWSUIT AGAINST EXPERIAN ...............7

     F.     EXPERIAN'S SUBPOENAS TO STECKLEIN & RAPP...............10

SUMMARY OF THE ARGUMENT ..................................................12

STANDARD OF REVIEW ...............................................................13

ARGUMENT ...................................................................................14

     I.     THE DISTRICT COURT MADE A MISTAKE OF LAW WHEN IT CONCLUDED THAT THE SUBPOENAS SOUGHT IRRELEVANT INFORMATION. ...................................14

          A.     Publicly Available Information And Discovery Strongly Suggest that Stecklein & Rapp Is A Credit Repair Organization...........................................................17

     II.     THE DISTRICT COURT ERRED IN AWARDING FEES AND COSTS TO STECKLEIN & RAPP .........................................20

CONCLUSION.................................................................................24

Appellate Case: 23-1879    Page: 4    Date Filed: 06/23/2023 Entry ID: 5289424

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*A-1 Credit & Assurance Co., Inc. v. Trans Union Credit Info. Co.*,
    678 F. Supp. 1147 (E.D. Pa. 1988) ................................................................... 17

*Berger v. N. Carolina State Conf. of the NAACP*,
    142 S. Ct. 2191 (2022) .......................................................................................... 19

*Bowman v. City of Olmsted Falls*,
    756 F. App'x 526 (6th Cir. 2018) ...................................................................... 20

*Cardinali v. Plusfour, Inc.*,
    No. 2:16-cv-02046-JAD-NJK, 2018 WL 7502644 (D. Nev. Oct. 9,
    2018) ......................................................................................................... 2, 18, 20

*Cardinali v. Plusfour, Inc.*,
    No. 2:16-cv-02046-JAD-NJK, 2019 WL 3456630 (D. Nev. June 6,
    2019) ................................................................................................................ 2, 22

*Christian v. Ford*,
    No. 4:14-CV-454, 2014 WL 4546173 (E.D. Mo. Sept. 12, 2014) .................... 14

*Dulworth* v. Experian Information Solutions, Inc.
    No. 1:22-cv-00469-JMS-MJD (S.D. Ind.) ................................................. 8, 9, 10

*FTC v. Gill*,
    265 F.3d 944 (9th Cir. 2001) ............................................................................... 19

*Hofer v. Mack Trucks, Inc.*,
    981 F.2d 377 (8th Cir. 1992) ............................................................................... 15

*Hooker v. Cont'l Life Ins. Co.*,
    965 F.2d 903 (10th Cir. 1992) ............................................................................... 1

*In re Boddy*,
    950 F.2d 334 (6th Cir. 1991) ............................................................................... 20

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Jackson v. Warning*,
No. 15-cv-1233, 2016 WL 7228866 (D. Md. Dec. 13, 2016) ............................17

*Klotz v. Trans Union, LLC*,
246 F.R.D. 208 (E.D. Pa. 2007) ..........................................................................16

*Klotz v. Trans Union, LLC*,
No. 05-cv-4580, 2008 WL 2758445 (E.D. Pa. July 16, 2018) ....................16, 19

*Lester v. City of Lafayette, Colo.*,
639 F. App'x 538 (10th Cir. 2016) ..........................................................2, 14, 22

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter
No. 2*, 197 F.3d 922 (8th Cir. 1999) ......................................................................1

*Pierce v. Underwood*,
487 U.S. 552 (1988) ..............................................................................21, 22, 23

*Pointer v. DART*,
417 F.3d 819 (8th Cir. 2005) .......................................................................passim

*Qwest Commc'ns Corp. v. Free Conferencing Corp.*,
920 F.3d 1203 (8th Cir. 2019) ............................................................................13

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ........................................................................17

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ................................................................................................3

*Serrano v. Cintas Corp.*,
699 F.3d 884 (6th Cir. 2012) ..............................................................................19

*Simpson v. Magnum Piering, Inc.*,
No. 4:17-CV-00731-NKL, 2018 WL 3352664 (W.D. Mo. July 9,
2018) ..............................................................................................................23, 24

v

*Tiberi v. CIGNA Ins. Co.*,
40 F.3d 110 (5th Cir. 1994) ...............................................21

*Turner v. Experian Information Solutions, Inc.*,
No. 3:16-cv-630, 2017 WL 2832738 (N.D. Ohio June 30, 2017)......2, 15, 16, 19

*United States v. Nat'l Ass'n of Sec. Dealers, Inc.*,
422 U.S. 694 (1975)........................................................15

*Warner v. Experian Info. Sols., Inc.*,
931 F.3d 917 (9th Cir. 2019) ...........................................2, 17, 18, 19

*Whelan v. Trans Union Credit Reporting Agency*,
862 F. Supp. 824 (E.D.N.Y. 1994) ................................16, 19

*WWP, Inc. v. Wounded Warriors Fam. Support, Inc.*,
628 F.3d 1032 (8th Cir. 2011) ..........................................13

**STATUTES**

15 U.S.C. § 1679a(3) .......................................................3, 6, 18

15 U.S.C. § 1681i.............................................................passim

28 U.S.C. § 1291 ...............................................................1

28 U.S.C. § 1332...............................................................1

28 U.S.C. § 2107...............................................................1

Credit Repair Organizations Act...............................................4, 17, 19

**OTHER AUTHORITIES**

AnnaMaria Andriotis, *Deluge of Fraud Claims Adds to Concerns About Credit Scores*, WALL STREET JOURNAL (Dec. 1, 2022) ......................4, 20

Appellate Case: 23-1879    Page: 7    Date Filed: 06/23/2023 Entry ID: 5289424

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Consumer Reporting Reform Act of 1994, Sen. Rep. 103-209 (1993) ..................... 4

Fed. R. App. P. 26.1 .................................................................................. ii

Fed. R. Civ. P. 26 ................................................................................... 14

Fed. R. Civ. P. 30(b)(6) ........................................................................... 10

Fed. R. Civ. P. 45 .............................................................................. passim

Federal Trade Commission, *40 Years of Experience With the Fair Credit Reporting Act*, 2011 WL 3020575 .................................................... 15, 19

H. Rep. No. 458 (1988) ............................................................................. 3

*How to Dispute Credit Report Information*, https://www.experian.com/blogs/ask-experian/credit-education/faqs/how-to-dispute-credit-report-information/#s1 ........................... 4

https://giveyourselfcredit.com/ .................................................................... 5

*Statement on Supervisory and Enforcement Practices Regarding the Fair Credit Reporting Act and Regulation V in Light of the CARES Act* (Apr. 1, 2020), https://files.consumerfinance.gov/f/documents/cfpb_credit-reporting-policy-statement_cares-act_2020-04.pdf ........................................ 15

Stecklein & Rapp, https://www.linkedin.com/company/stecklein-&-rapp ............................................................................................................... 6

Stecklein & Rapp, What to Do When It's NOT YOU; Connie's Tax Return Is Stolen and ID Theft Ensues, https://www.giveyourselfcredit.com/what-to-do-when-its-not-you1/ ................................................................................................ 6

7 Moore's Federal Practice § 37.23[11] (3d ed. 2014) .................................. 21

Appellate Case: 23-1879     Page: 8     Date Filed: 06/23/2023 Entry ID: 5289424

# JURISDICTIONAL STATEMENT

This is an appeal from the District Court of the Western District of Missouri, pursuant to 28 U.S.C. § 1291, wherein the Honorable Roseann Ketchmark quashed two subpoenas served by Experian on Stecklein & Rapp. The District Court had jurisdiction over this matter, pursuant to 28 U.S.C. §1332 and Federal Rule of Civil Procedure 45, at the time it entered its Judgment on April 18, 2023. Experian timely filed its Notice of Appeal on April 26, 2023, pursuant to 28 U.S.C. § 2107. Under the collateral order doctrine, the Eighth Circuit has appellate jurisdiction to review the Judgement entered by the District Court. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) ("Thus, under the collateral order doctrine we have jurisdiction to review the order quashing the subpoena." (citations omitted)); *see also Hooker v. Cont'l Life Ins. Co.*, 965 F.2d 903, 904 (10th Cir. 1992) (recognizing an exception to the finality requirement of § 1291 "where a district court, other than the district court before which the main action is pending, issues an order denying discovery against a nonparty" (footnote and citations omitted)).

1

## STATEMENT OF THE ISSUES

     1.    Whether the district court erred by holding the discovery sought by Experian in two subpoenas was not relevant to Experian's defenses against the Dulworths' claims under 15 U.S.C. § 1681i of the Fair Credit Reporting Act.

Apposite Authorities:

*Pointer v. DART*, 417 F.3d 819 (8th Cir. 2005)

*Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917 (9th Cir. 2019)

*Turner v. Experian Information Solutions, Inc.*, No. 3:16-cv-630, 2017 WL 2832738 (N.D. Ohio June 30, 2017)

     2.    Whether the district court erred by awarding attorneys' fees and costs to Plaintiff-Appellee Stecklein & Rapp.[1]

Apposite Authorities:

*Lester v. City of Lafayette, Colo.*, 639 F. App'x 538 (10th Cir. 2016)

*Cardinali v. Plusfour, Inc.*, No. 2:16-cv-02046-JAD-NJK, 2018 WL 7502644 (D. Nev. Oct. 9, 2018)

*Cardinali v. Plusfour, Inc.*, No. 2:16-cv-02046-JAD-NJK, 2019 WL 3456630 (D. Nev. June 6, 2019)

---

[1] Experian and Stecklein & Rapp are currently awaiting a decision by the District Court as to whether the $93,234.50 in attorneys' fees and costs sought by Stecklein & Rapp are justified. (R. Docs 22, 31, 36). Accordingly, at this time, Experian seeks to challenge the appropriateness of the sanction and not the amount of the sanction.

Appellate Case: 23-1879    Page: 10    Date Filed: 06/23/2023    Entry ID: 5289424

## STATEMENT OF THE CASE

### A. THE FAIR CREDIT REPORTING ACT

Congress enacted the FCRA "to ensure fair and accurate credit reporting . . . ." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Relevant here, § 1681i(a) of the FCRA obligates consumer reporting agencies ("CRA"s) like Experian to conduct a reasonable reinvestigation when "the consumer notifies the agency directly, or indirectly through a reseller, of such dispute . . . ." 15 U.S.C. § 1681i(a)(1)(A). "A CRA need not investigate a dispute about a consumer's file raised by a third party — such as a 'credit repair organization' defined in 15 U.S.C. §1679a(3) — because the obligation under this section arises only where file information is disputed "by the consumer" who notifies the agency "directly" of such dispute." Fed. Trade Comm'n, Forty Years of Experience with the Fair Credit Reporting Act, July 2011, at 78 (*available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf).

### B. CREDIT REPAIR ORGANIZATIONS

In 1996, Congress passed the Credit Repair Organizations Act ("CROA"), to regulate Credit Repair Organizations ("CROs"). These CROs typically promise, for a fee, to "clean" credit reports regardless of whether such reports contain errors. *See* H. Rep. No. 458, at 1–2 (1988). Concerned that CROs too often "inappropriately led consumers to believe that adverse information in consumer reports can be deleted or modified regardless of the accuracy of the information," Congress enacted the CROA to

combat "credit repair fraud." The Consumer Reporting Reform Act of 1994, Sen. Rep. 103-209, at 5 (1993). Congress noted that "[m]ost often," a credit repair organization's "product is not a 'Mr. Clean' which leaves a consumer's credit history sparkling bright, but a 'Drano' that cleans out a consumer's pocket." But, despite the best efforts of Congress, CROs continue to send massive quantities of mail to Experian and other credit reporting agencies on behalf of consumers. (App. 54, R. Doc. 7, at 3 n.2 (citing AnnaMaria Andriotis, *Deluge of Fraud Claims Adds to Concerns About Credit Scores*, WALL STREET JOURNAL (Dec. 1, 2022), https://www.wsj.com/articles/credit-score-washing-identity-theft-11669848797) (stating that Trans Union recently received "some 1,200" letters, allegedly from consumers, which were all mailed from the same ZIP Code and contained the same format, text, and typos))).

### C.     EXPERIAN INFORMATION SOLUTIONS, INC.

Experian is a nationwide consumer reporting agency. (App. 54, R. Doc. 7, at 3). Like other consumer reporting agencies, Experian does not originate or create credit information, but rather stores data supplied by "furnishers" who engage in credit transactions with consumers. Furnishers report "trade lines" to Experian consisting of individual credit account data such as account number, status, and balance as well as certain identifying information used to match particular accounts to the appropriate consumer. In the event that a consumer identifies an error in their consumer credit file, Experian permits them to initiate a dispute free of charge by telephone, by mail, or by visiting Experian's secure website. *See* Experian, *How to Dispute Credit Report*

4

*Information*, https://www.experian.com/blogs/ask-experian/credit-education/faqs/how-to-dispute-credit-report-information/#s1. After the initiation of a dispute directly from the consumer, Experian is then required under § 1681i of the FCRA to: (1) conduct a reinvestigation to determine whether the dispute information is accurate and (2) provide the results of that reinvestigation to the consumer. 15 U.S.C. §§ 1681i(a)(1), (6).

In order to ensure that the dispute letters received by mail were created by the consumer listed on the dispute letter, Experian has implemented various mail-processing procedures to screen incoming mail. (Hearing Tr. 12:9–18). These policies serve to identify which dispute letters are sent by real, living consumers and which dispute letters are sent by credit repair organizations.[2]

### D.    STECKLEIN & RAPP

Stecklein & Rapp specializes in credit reporting law; the homepage of their website states they are a "credit consumer law firm" that offers to "correct your credit." *See* https://giveyourselfcredit.com/, *last accessed* June 9, 2023. Stecklein & Rapp advertises, both on their own website, as well as others, that they offer services to help consumers fix errors on their credit reports and improve the consumer's creditworthiness. Among the many examples of Stecklein & Rapp advertising to

---

[2] These policies benefit consumers as well. By only responding to correspondence that appears sent by consumers, Experian avoids providing sensitive information in consumer credit files to imposters or identity thieves.

Appellate Case: 23-1879     Page: 13     Date Filed: 06/23/2023 Entry ID: 5289424

consumers that they can "provide assistance" with "improving any consumer's credit record, credit history, or credit rating" 15 U.S.C. § 1679a(3), include:

- A blog posted dated authored by Michael Rapp and dated September 24, 2021, entitled "Getting Out of a Co-Signed Loan That's Ruining Your Credit" that includes a promise that Stecklein & Rapp will "fight . . . to ensure that the co-signed loan doesn't ruin your credit." (App. 295–302, R. Doc. 18; App. 424, R. Doc. 18-2 at 4).

- An explicit invitation for consumers to contact to Stecklein & Rapp since consumers "don't need to deal" with the dispute process. (App. 295–302, R. Doc. 18; App. 431, R. Doc. 18-3 at 5).

- An express statement by Stecklein & Rapp that the firm "deal[s] directly with the offending creditors, debt collectors, and credit reporting agencies to help you restore your reputation and credit score to what it rightfully should be" and that they do so to collect fees from "the companies that have harmed or harassed you over debts and errors they have introduced." (App. 295–302, R. Doc. 18; App. 437, R. Doc. 18-4 at 4).

- And, on the firm's LinkedIn page, Stecklein & Rapp makes clear to potential clients that the firm is compensated by later litigating claims related to these dispute letters — at no expense to clients. *See* Stecklein & Rapp, https://www.linkedin.com/company/stecklein-&-rapp, *last accessed* June 9, 2023 ("[Y]ou never have to open your wallet to get us to help.").

Stecklein & Rapp's website even advertises that its attorneys are willing to file dispute letters on their clients' behalf. For example, in a video entitled "Connie's Tax Return is Stolen and ID Theft Ensues, Stecklein & Rapp published a vignette on behalf of a fictitious client in which the fictitious client states: "I wished I would have realized that a fair credit lawyer, like the ones at Stecklein & Rapp, would have helped me through the dispute process for free." Stecklein & Rapp, What to Do When It's NOT YOU; Connie's Tax Return Is Stolen and ID Theft Ensues,

6

https://www.giveyourselfcredit.com/what-to-do-when-its-not-you1/, *last accessed* March 25, 2023 (2:12–2:31).[3]

## E.   THE DULWORTHS' LAWSUIT AGAINST EXPERIAN

On October 12, 2018, the Dulworths filed a joint Chapter 7 bankruptcy petition. *In re Craig and Brianna Dulworth*, No. 1:18-bk-07856 (Bankr. S.D. Ind.) (Dkt. No. 1). Then, in December 2018, and as part of their bankruptcy proceedings, the Dulworths filed a reaffirmation agreement for an Ally Bank car loan. *Id.* (Dkt. No. 20). Such reaffirmation agreements, where valid, signify an intent for the relevant debt to "survive" the bankruptcy instead of being discharged. Several years later, in March 2022, the Dulworths filed suit against Experian.

According to the lawsuit filed by the Dulworths, Experian incorrectly reported their Ally Bank car loan as "discharged through bankruptcy," when it should have been reported as open in accordance with the reaffirmation agreement filed on their bankruptcy docket. *Dulworth*, No. 1:22-cv-00469 (S.D. Ind.) (Dkt. 72 ¶¶ 17, 19). Further, the Dulworths alleged that they "disputed the inaccuracies on their . . . Experian credit

---

[3] After Experian referenced this webpage in briefing before the District Court, (App. 55, R. Doc. 7, at 4), it appears that Stecklein & Rapp has removed this webpage from the website. However, various versions of the webpage can be accessed through the Internet Archive Wayback Machine, with the last screen capture occurring on February 1, 2023. *See* https://web.archive.org/web/20230201185301/https://www.giveyourselfcredit.com/what-to-do-when-its-not-you1/. Experian has also retained a copy of the video formerly embedded onto the webpage, which it can provide the panel. Experian is unsure why Stecklein & Rapp removed the webpage advertising its credit services after it was cited in the briefing.

Appellate Case: 23-1879   Page: 15   Date Filed: 06/23/2023 Entry ID: 5289424

reports in dispute letters dated September 7, 2021 . . . [and] November 1, 2021." *Id.* (¶¶ 22, 26). As a result of Experian receiving these dispute letters, the Dulworths alleged that Experian was required to conduct a reasonable reinvestigation under § 1681i of the FCRA and, further, that Experian violated § 1681i by failing to "use reasonable procedures to reinvestigate Plaintiffs' disputes." *Id.* (¶¶ 45, 48).

However, evidence suggested that the dispute letters sent to Experian were drafted by a CRO and *not* drafted or sent by the Dulworths. In particular, it appeared that Stecklein & Rapp had heavily participated in the dispute process on behalf of (or in place of) their clients. For example, at Brianna Dulworth's deposition, Brianna Dulworth testified on multiple occasions that she did not draft the dispute letters that were sent to Experian. *See, e.g.*, (App. 67–78, R. Doc. 7-1, Brianna Dulworth Deposition Tr., at 108:22–109:13 ("Q: And did you draft these letters? A: No, I did not draft them. . . . Like, I helped write them, if that makes any sense. But to actually put it on paper . . . I had counsel to help me figure that out.")). Brianna Dulworth also testified she was unaware of the software used to prepare those dispute letters. *Id.*, 117:21–23 ("Q: Do you know what software was used in preparing the dispute letters? A: No."). Brianna Dulworth further testified that her counsel sent Experian the dispute letters by mail. *Id.*, 93:11–14 ("Q: Can you be clear as to did you send the letters, or did your counsel send the letters? A: Well, my -- my counsel mailed them."). In other words, Brianna Dulworth testified under oath: (1) she did not draft the dispute letters sent to Experian on her behalf, (2) she is unaware of the software was used to prepare the dispute letters sent to Experian,

8

and (3) she did not send the dispute letters received by Experian. But, her testimony was often foggy and incomplete and unfortunately did not provide a complete picture as to Stecklein & Rapp's role in the dispute process. (Hearing Tr. 36:13–14).[4]

Experian's Rule 30(b)(6) witness in the *Dulworth* action also testified that Experian has received dispute letters in other matters involving Stecklein & Rapp, purportedly from other consumers, in the "exact [same] format" with the only changes between letters relating to "the personal information and the specific account being disputed." (App. 214–18, R. Doc. 12-2, Experian Rule 30(b)(6) Deposition Tr., at 75:12–14). Experian's counsel presented the district court with an example of such a letter in briefing. (App. 84–89, R. Doc. 7-3). That dispute letter, along with other letters received by Experian from other clients of Stecklein & Rapp, contained nearly identical headings, subject lines, and verbiage when compared to the dispute letters allegedly draft and sent by the Dulworths. (App. 54, R. Doc. 7, at 3). Further, as noted by Experian's counsel during the April 5, 2023 hearing, **all** of these letters were addressed to "701 Experian Pkwy, Allen, TX 75013-3713," an unlisted address for one of Experian's administrative

---

[4] During Craig Dulworth's first deposition, which was scheduled for March 16, 2023, Craig Dulworth experienced a seizure and demonstrated substantial memory loss. *See Dulworth*, No. 1:22-cv-00469-JMS-MJD (S.D. Ind.) (Dkt. No. 125). At the direction of the Court in *Dulworth*, Experian has continued to depose Craig Dulworth on several later dates, *id.* (Dkt. Nos. 131, 151, 156, 157, 158, 159, and 160), although Craig Dulworth continues to experience memory loss. But, as Experian's counsel noted before the District Court, Experian likely will not be able to obtain relevant testimony from Craig Dulworth on these issues due to his memory loss. (Hearing Tr. 41:18–24).

Appellate Case: 23-1879     Page: 17     Date Filed: 06/23/2023 Entry ID: 5289424

facilities. (Hearing Tr. 9:24–10:11, 10:21–11:3). It defies belief that all of Stecklein & Rapp's clients would use the same, unlisted address for Experian.

The only questions that remained at the time Experian served the subpoenas was the *extent* of the role played by Stecklein & Rapp in drafting, revising, and sending dispute letters on behalf of the Dulworths and confirming the public impression that Stecklein & Rapp offered these services as part of their credit repair business. To answer those questions, on March 7, 2023, Experian served document and deposition subpoenas on Stecklein & Rapp. *Dulworth*, No. 1:22-CV-00469-JMS-MJD (S.D. Ind.) (Dkt. No. 123 ¶¶ 1–2).

## F.    EXPERIAN'S SUBPOENAS TO STECKLEIN & RAPP

On March 7, 2023, Experian served two subpoenas under Federal Rule of Civil Procedure 45 to Stecklein & Rapp. One sought the production of documents, while the other deposition testimony on eight topics. The document subpoena contained Requests aimed at documents which would clarify the nature and scope of the credit repair services Stecklein & Rapp offers its clients as well as how Stecklein & Rapp is compensated for those services. (App. 90–150, R. Doc. 7-4). And, Experian's deposition subpoena sought testimony on the same subjects. (App. 151–209, R. Doc 7-5). Immediately following service of the subpoenas, Experian's counsel offered, on at least three occasions, to narrow or eliminate the topics contained in the subpoenas, but Stecklein & Rapp's outside counsel refused any compromise. (App. 60, R. Doc. 7, at 14; App. 210–213, R. Doc. 7-6 ¶¶ 5–6).

Appellate Case: 23-1879    Page: 18    Date Filed: 06/23/2023 Entry ID: 5289424

Two weeks after service of the subpoenas, Stecklein & Rapp filed a Motion to Quash Subpoenas and for Protective Order ("the Motion") in which Stecklein & Rapp requested the district court quash the subpoenas in full and award attorneys' fees and costs. (App. 6-8, R. Doc. 1). After Stecklein & Rapp and Experian briefed the issue, (R. Doc. 2, App. 9–24; App. 52–66, R. Doc. 7, App. 224–238, R. Doc. 14), the district court held a hearing on April 5, 2023. (App. 240–294, R. Doc. 17).[5] Two days later, the district court granted Stecklein & Rapp's Motion. (App. 441–444, R. Doc. 19).

In quashing Experian's subpoena, and granting Stecklein & Rapp their attorneys' fees and costs, the District Court focused only on the Dulworths' level of participation, agreeing that the role the Dulworths played was relevant to their claims in the Indiana action, but mistakenly holding that it was the sole "relevant question." Although the District Court did not address or distinguish the myriad authority Experian provided regarding credit repair organizations, the court held "any representations made by their counsel's firm in advertising, retention letters, interactions and communications with other clients, their compensation structure, and other similar matters generally referred to and requested in the subject subpoenas are not relevant." (*Id.* at 4).

---

[5] At the suggestion of the district court, Experian submitted a Supplemental Filing of Facts and Law within two days of the hearing. (App. 295–302, R. Doc. 18). Stecklein & Rapp submitted a similar filing, in the form of a letter, to the district court by email.

Appellate Case: 23-1879     Page: 19     Date Filed: 06/23/2023 Entry ID: 5289424

## SUMMARY OF THE ARGUMENT

Like all Rule 45 subpoenas aimed at obtaining discovery from third parties, Experian's subpoenas to Stecklein & Rapp presented two questions. First, whether the subpoenas sought relevant discovery. Second, had Experian taken reasonable steps to avoid imposing undue burden on Stecklein & Rapp. The answer to the first question is plainly "yes," but the district court got this simple question wrong, and did not address the second prong at all. As to relevance, there is little question that Stecklein & Rapp drafted and mailed the Dulworths' disputes in the underlying case. As such there is little question that the exact nature of Stecklein & Rapp's role in the Dulworths' dispute is relevant to the Dulworths' claims under § 1681i. Whether Stecklein & Rapp were operating as a credit repair organization when they wrote and mailed the Dulworth letters — letters that were just template letters slightly modified from the many other letters Stecklein & Rapp has sent to Experian — bears both on whether the Dulworths directly disputed their information as required under § 1681i, and whether Experian's failure to reinvestigate that dispute willfully violated the FCRA such that the Dulworths could recover punitive damages.

The district court ignored the overwhelming weight of authority construing § 1681i of the FCRA. That authority unanimously holds that whether a consumer "directly" disputed information, or whether the dispute originated from a CRO is relevant to, and often dispositive of, claims under § 1681i. Put simply, there is no authority to support the district court's view that the role of a CRO in the dispute process

12

is not relevant to the Dulworths' claims in Indiana. Not only was this holding an abuse of discretion that relied on a misapplication of the standard for relevance and a misunderstanding of the subpoenas, but it effectively foreclosed Experian from pursuing necessary discovery related to a defense that could determine the outcome of claims raised by the Dulworths against Experian. Further compounding this error, the District Court awarded fees and costs against Experian without providing *any* accompanying analysis as to why the sanction was justified or even the authority for such a sanction. By holding that the information requested was irrelevant and that sanctions were warranted, the District Court abused its discretion. On both fronts, the district court's order should be reversed.

## STANDARD OF REVIEW

The Eighth Circuit "review[s] orders quashing a subpoena for abuse of discretion." *Pointer v. DART*, 417 F.3d 819, 821 (8th Cir. 2005) (citing *Miscellaneous Docket Matter # 1*, 197 F.3d at 925). Similarly, the Eighth Circuit also "review[s] relevancy determinations for abuse of discretion." *Pointer*, 417 F.3d at 821 (citing *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 360–62 (8th Cir. 2003)). "The abuse-of-discretion standard means 'the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 920 F.3d 1203, 1206 (8th Cir. 2019) (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013)). In reviewing a district court's relevancy determination for an abuse of discretion,

13

the Eighth Circuit focuses on whether the "potential [evidence] [falls] within the broad scope of [Federal] Rule [of Civil Procedure] 26." *Pointer*, 417 F.3d at 822. Separately, the District Court's decision to award Stecklein & Rapp attorneys' fees and costs should also be reviewed for an abuse of discretion. *See Lester v. City of Lafayette, Colo.*, 639 F. App'x 538, 541–43 (10th Cir. 2016).

## ARGUMENT

I. **THE DISTRICT COURT MADE A MISTAKE OF LAW WHEN IT CONCLUDED THAT THE SUBPOENAS SOUGHT IRRELEVANT INFORMATION.**

Under Eighth Circuit caselaw, the test for relevance is minimal — litigants are permitted to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Eighth Circuit has acknowledged that "[b]road discovery is an important tool for [ ] litigants" so discovery requests meet the standard for relevancy if the requests are "'reasonably calculated to lead to the discovery of admissible evidence.'" *WWP, Inc. v. Wounded Warriors Fam. Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(1)); *see also Pointer*, 417 F.3d at 822 (referring to the "broad scope of Rule 26"); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (requiring only a "threshold showing of relevance" to be made "before parties are required to open wide the doors of discovery"). These minimal standards for relevance are incorporated into Rule 45, which applies to subpoenas issued to third parties. *See Christian v. Ford*, No. 4:14-CV-454 SNLJ, 2014 WL 4546173, at *1 (E.D. Mo. Sept. 12, 2014) ("[A] plaintiff's ability to subpoena

14

documents is subject to the relevance standards of Federal Rule of Civil Procedure 26(b)(1)." (citations omitted)).

Under § 1681i, an obligation to reinvestigate is triggered only "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer **notifies the agency directly**, or indirectly through a reseller." § 1681i(a)(1)(A) (emphasis added). Consistent with the plain text of § 1681i, a host of authority distinguishes between disputes that originate with the consumer and are sent directly to the CRA, and those that originate with a CRO. For instance, In 1990, the FTC published comments 611-7 and 611-8 stating that, under § 1681i(a):

> A [credit reporting agency] need not investigate a dispute about a consumer's file raised by a third party—such as a 'credit repair organization' defined in 15 U.S.C. § 1679a(3)—because the obligation under this section arises only where file information is disputed 'by the consumer' who notifies the agency 'directly' of such dispute.

And, the FTC republished these comments in July 2011. *See* Federal Trade Commission, *40 Years of Experience With the Fair Credit Reporting Act*, 2011 WL 3020575, at \*70 (2011) (same).[6] Though interpretations in agency reports are not controlling, they are

---

[6] Although the Consumer Financial Protection Bureau ("CFPB") has not yet provided identical guidance, the CFPB has also issued guidance that consumer reporting agencies need not respond to disputes submitted by third-party credit repair organizations. *See* Consumer Financial Protection Bureau, *Statement on Supervisory and Enforcement Practices Regarding the Fair Credit Reporting Act and Regulation V in Light of the CARES Act* (Apr. 1, 2020), https://files.consumerfinance.gov/f/documents/cfpb_credit-reporting-policy-statement_cares-act_2020-04.pdf.

"entitled to considerable weight." *United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 718–19 (1975); *see also Turner v. Experian Information Solutions, Inc.*, No. 3:16-cv-630, 2017 WL 2832738, at \*5 (N.D. Ohio June 30, 2017) (granting summary judgment to Experian on a § 1681i claim and considering the language of the statute and the FTC interpretation in construing § 1681i); *Klotz v. Trans Union, LLC*, No. 05-cv-4580, 2008 WL 2758445, at \*4–5 (E.D. Pa. July 16, 2018) (reaching the same conclusion).

Numerous courts have found that letters that a credit repair organization drafted and sent to a consumer reporting agency purporting to dispute items of information in a consumer's credit file are, by definition, not "direct." *Turner*, 2017 WL 2832738, at \*7 (dispute letter sent to Experian by credit repair organization, on behalf of a consumer, was not sent "directly" by the consumer and conferred no obligation for Experian to reinvestigate under 15 U.S.C. § 1681i); *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 833 (E.D.N.Y. 1994) (holding that plaintiffs' FCRA claim "can be disposed of readily" because the "FCRA requires that the information be conveyed *by the consumer* directly to the credit reporting agency" (emphasis in original)); *Klotz*, 2008 WL 2758445, at \*2–5 (finding, where the plaintiff merely signed "pre-drafted disputes" prepared by a credit repair organization, the items at issue "were not 'disputed by' the plaintiff," the consumer reporting agency "did not owe the plaintiff a duty to reinvestigate," and plaintiff's "claim under 1681i(a)(1)(A) fails"); *see also Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 212 (E.D. Pa. 2007) (reasoning that the

16

"statute requires a [credit reporting agency] to investigate a disputed item only if the dispute is conveyed 'directly' by the consumer" and "[i]f the dispute is not conveyed to the [credit reporting agency] 'directly,' a claim under section 1681i will fail"); *Jackson v. Warning*, No. 15-cv-1233, 2016 WL 7228866, at *8 n.9 (D. Md. Dec. 13, 2016) ("Even if the [credit reporting agency] is informed of the dispute by the furnisher, the FCRA requires that the information be conveyed by the consumer directly to the credit reporting agency."); *A-1 Credit & Assurance Co., Inc. v. Trans Union Credit Info. Co.*, 678 F. Supp. 1147, 1151 (E.D. Pa. 1988) (stating that a credit reporting organization "is under no obligation to recognize [a credit repair organization] as the consumer's agent").

To be sure, where a CRO is also the consumer's attorney, the analysis may be more complicated. *See, e.g.*, *Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921 (9th Cir. 2019) (holding that disputes from a CRO did not trigger Experian's duties under § 1681i, but noting "[o]ur holding is limited to the facts before us [since] [t]his case does not involve a letter sent to a consumer reporting agency by a consumer's attorney"). Courts have noted, however, that the CROA does not exempt lawyers, and thus "attorneys are credit repair organizations if they qualify under the CROA." *Rannis v. Recchia*, 380 F. App'x 646, 649 (9th Cir. 2010) (citing *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)).

### A. Publicly Available Information And Discovery Strongly Suggest that Stecklein & Rapp Is A Credit Repair Organization.

Under the terms of the CROA, a Credit Repair Organization is:

[A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—

(i) improving any consumer's credit record, credit history, or credit rating; or

(ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3).

There is ample public information that suggests that Stecklein & Rapp operates as a CRO. On their website, and on social media, they have made numerous representations to consumers that Stecklein & Rapp can provide services that will improve consumers' credit records by removing "inaccurate" information. Indeed, other courts have already addressed subpoenas just like those issued to Stecklein & Rapp here, holding that the theory that a law firm also operates as a credit repair organization by recouping in follow on litigation was "not an unreasonable one." *See Cardinali v. Plusfour, Inc.,* No. 2:16-CV-02046-JAD-NJK, 2018 WL 7502644, at *6, n.7 (D. Nev. Oct. 9, 2018) (allowing Experian to conduct discovery into law firm's credit repair services).

As the Ninth Circuit suggested in *Warner*, there are multiple factors in determining whether the Dulworths' dispute was "direct" as required by the plain language of § 1681i. As the district court noted, those factors include the role the Dulworths themselves played, but it also extends to the role Stecklein & Rapp played,

18

and whether it was operating as a CRO at that time. It was an unfortunate, but clear, mistake of law to hold, as the district court did, that Stecklein & Rapp's credit repair business was not relevant to the Dulworths' claims in Indiana. *See, e.g.*, *Warner*, 931 F.3d at 921, *Turner*, 2017 WL 2832738, at *7; *Whelan*, 862 F. Supp. at 833; *Klotz*, 2008 WL 2758445, at *2–5; Federal Trade Commission, *40 Years of Experience With the Fair Credit Reporting Act*, 2011 WL 3020575, at *70. Federal circuits, including the Eighth Circuit, have established that such misapplications of the relevance standard are sufficient alone to establish an abuse of discretion. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012) (determining erroneous conclusion by magistrate judge that a deponent was "unlikely to have any information relevant to the issues in the case [was] undermined" by case law and remanding for further proceedings accordingly); *Pointer*, 417 F.3d at 822 (concluding district court abused its discretion in denying a motion to enforce subpoenas because the requested testimony was relevant since it could be used "for impeachment purposes"); *see also Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2206 (2022) ("Even under an abuse-of-discretion standard, a misunderstanding of applicable law generally constitutes reversible error.").

If left intact, the District Court's decision will effectively permit credit repair organizations to avoid any discovery into their roles in consumer disputes. This outcome contradicts much of the rationale behind Congress's passage of the CROA and would instead permit credit repair organizations to "abuse . . . reinvestigation procedures" and "take advantage of [the FCRA] by inundating consumer reporting agencies with so many

19

challenges to consumer reports that the reinvestigation system breaks down, and the adverse, but accurate, information is deleted." *Gill*, 265 F.3d at 949 (quoting H.R. REP. NO. 103–486 (1994), 1994 WL 164513)). These concerns are not abstract as credit repair organizations often send multiple form dispute letters, all of which are nearly identical to one another, on behalf of consumers. *See* AnnaMaria Andriotis, *Deluge of Fraud Claims Adds to Concerns About Credit Scores*, WALL STREET JOURNAL (Dec. 1, 2022), https://www.wsj.com/articles/credit-score-washing-identity-theft-11669848797 (stating that Trans Union recently received "some 1,200" letters, allegedly from consumers, which were all mailed from the same ZIP Code and contained the same format, text, and typos)).

## II. THE DISTRICT COURT ERRED IN AWARDING FEES AND COSTS TO STECKLEIN & RAPP

After determining that *all* of the discovery sought by Experian was irrelevant, the District Court awarded fees and costs to Stecklein & Rapp. The District Court devoted only a few words to the fee and costs award, neglecting to even acknowledge whether the award was granted under Rule 45(d)(1) (which permits sanctions awards if a party does not take reasonable steps to avoid imposing undue burden or expenses on the recipient of a subpoena) or another authority, such as Rule 37(a)(5)(B). The lack of a record on this point alone is sufficient grounds for the panel to remand this matter for the District Court to provide additional clarity. *See Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 532 (6th Cir. 2018) (remanding, in part, after concluding the district

20

court "provided insufficient analysis from which we can evaluate whether the order was an abuse of discretion"); *In re Boddy*, 950 F.2d 334, 337–38 (6th Cir. 1991) (vacating and remanding where bankruptcy court provided "little or no analysis of how the fees are determined" and, as a consequence, the award was "arbitrary and unreviewable"). The lack of clarity in the District Court's Order is all the more critical given differences of opinion as to which provisions permit sanctions awards in procedurally similar matters. *Compare* 7 Moore's Federal Practice § 37.23[11] (3d ed. 2014) ("[I]f a nonparty were to file [a motion for protective order] . . . and prevail, and if the court were to conclude that the party pursuing the discovery had resisted the motion without substantial justification, sanctions would appear to be appropriately based either on Rule 45(d)(1) or Rule 37(a)(5)(B)."), *with Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) ("The sanctions provisions of Rules 26 and 37 authorize expenses against a party resisting discovery by unreasonably necessitating a motion to compel or by unreasonably moving for a protective order. There is neither warrant nor need to strain the express language of these rules given the ready applicability of another rule[,] Rule 45(c)(1)."). But, regardless of whether the District Court decided to award fees and costs under Rule 37 or Rule 45, the panel should vacate the award for the reasons below.

With regard to Rule 37(a)(5)(B), the sanctions provision is only applicable if "the motion was substantially justified or other circumstances make an award of expenses unjust." The Supreme court has described the test for "substantially justified" under Rule 37 as "a genuine dispute or if reasonable people could differ as to the appropriateness of

21

the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (cleaned up). "Substantially justified" connotes "not justified to a high degree, but rather justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Id.* (internal quotation marks omitted). And because the discovery sought by Experian was relevant and the District Court's holding to the contrary resulted from a misapplication of the standard for relevance, *see supra* Sections I.A–D, Experian meets this minimal burden. *See Lester v. City of Lafayette, Colo.*, 639 F. App'x 538, 542 (10th Cir. 2016) (overturning fee award under Rule 37 after concluding the district court adopted "an erroneous view of the law" in concluding that the information sought was irrelevant).

But, even if the documents and testimony targeted by the subpoenas were deemed not relevant (and to be clear, the weight of authorities indicates they are clearly relevant), the District Court's sanctions award under Rule 37 still amounts to an abuse of discretion. Under *Pierce*, the test for "[s]ubstantially justified" simply looks to whether there could be "a genuine dispute or [whether] reasonable people could differ as to the appropriateness of the contested action." *Pierce*, 487 U.S. at 565 (cleaned up). Even if the panel were to depart from every other court and decide the information targeted by the subpoenas was not relevant, the very existence of this body of case law indicates the discovery sought was substantially justified under *Pierce*. In fact, another court repeatedly determined that virtually identical subpoena requests, which were also sent to a law firm that appeared to write and send disputes on behalf of its clients, sought

22

relevant information. *See Cardinali*, 2018 WL 7502644, at *3 ("The testimony sought through the disputed deposition subpoena is plainly relevant."); *Cardinali v. Plusfour, Inc.*, No. 2:16-cv-02046-JAD-NJK, 2019 WL 3456630 (D. Nev. June 6, 2019) (holding various document requests were relevant). Surely, the fact that another federal court determined the subject matter of the subpoenas to be relevant is sufficient to establish "a genuine dispute or [whether] reasonable people could differ as to the appropriateness of the contested action." *Pierce*, 487 U.S. at 565 (cleaned up). That alone is sufficient to vacate the District Court's award of sanctions under Rule 37.

Further, it is equally apparent that any fee award under Rule 45 should be similarly vacated. Rule 45(d)(1) only permits sanctions if the party serving the subpoena fails to "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Although sanctions under Rule 45(d)(1) are discretionary, the rule targets parties who issue a subpoena "in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Simpson v. Magnum Piering, Inc.*, No. 4:17-CV-00731-NKL, 2018 WL 3352664, at *4 (W.D. Mo. July 9, 2018) (quoting *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013)). Here, it is uncontested that Experian's counsel offered, on at least three separate occasions, to narrow or eliminate the topics contained in the subpoenas but that Stecklein & Rapp's counsel indicated their preference to brief the issue. (App. 65, R. Doc. 7, at 14; App. 212, R. Doc. 7-6 ¶¶ 5–6). The only reason that the scope of the subpoenas was not narrowed was because Stecklein & Rapp refused to engage in those discussions on the ground "that the subpoenas should

23

be quashed in their entirety." (Hearing Tr. 9:19–20). Such attempts by Experian's counsel to limit the scope of the subpoenas surely shows that Experian acted in good faith and satisfied the requirement set in Rule 45(d)(1) that the party serving the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *See Simpson*, No. 4:17-CV-00731-NKL, 2018 WL 3352664, at *4 (finding fees were not warranted under Rule 45(d)(1) where there was "no evidence that [the party who served the subpoena] has acted in anything other than good faith, or that he acted with an improper purpose").

## CONCLUSION

For the foregoing reasons, the District Court's Order entering Judgment on April 18, 2023 in favor of Appellee Stecklein & Rapp should be REVERSED and all fees and costs awarded to Stecklein & Rapp should be VACATED.

Dated: June 21, 2023

/s/ Adam W. Wiers

Adam W. Wiers
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: awwiers@jonesday.com

G. Edgar James
JAMES SOBBA, LLC
4435 Main Street, Suite 910
Kansas City, Missouri 64111
Telephone: (816) 623-0544
Facsimile: (816) 623-0568
Email: ejames@jamessobba.com

*Counsel for Defendant–Appellant*
*Experian Information Solutions, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that: (1) this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 6,493 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and (2) this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Times New Roman font in the text and footnotes.

Dated: June 21, 2023

*/s/ Adam W. Wiers*
*Counsel for Defendant–Appellant*
*Experian Information Solutions, Inc.*

## CIRCUIT RULE 28A(h) CERTIFICATION

In accordance with Circuit Rule 28A(h), I hereby certify that this filing has been scanned for viruses and is virus free.

Dated: June 21, 2023

*/s/ Adam W. Wiers*
*Counsel for Defendant–Appellant*
*Experian Information Solutions, Inc.*

## CERTIFICATE OF SERVICE AND MAILING

I hereby certify that, on June 21, 2023, pursuant to Federal Rule of Appellate Procedure 25(a)(2)(A)(ii), (d)(2), and Eighth Circuit Court of Appeals Local Rule 25A(e), I caused a true and correct copy of the foregoing Brief for Defendant-Appellant Experian Information Solutions, Inc. to be mailed by first class mail, postage paid, to the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit as follows:

Clerk of Court
United States Court of Appeals
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
St. Louis, MO 63102

I further certify that I caused a true and correct copy of same to be mailed and a courtesy copy e-mailed to Plaintiff-Appellee's counsel, as follows:

Daniel McClain
Cody R. Weyhofen
Siegfried Bingham, P.C.
dmcclain@sb-kc.com
cweyhofen@sb-kc.com
2323 Grand Boulevard, Suite 1000
Kansas City, Missouri 64108

28

Robert D. Friedman
Matthew W.H. Wessler
Gupta Wessler PLLC
robert@guptawessler.com
matt@guptawessler.com
2001 K Street NW, Suite 850 North
Washington, DC 20006

*Counsel for Plaintiff-Appellee*